## S96A0179. ELLISON v. THE STATE.
### (470 SE2d 872)

Sears, Justice.

The appellant, Anthony Ellison, was convicted of the malice murder of Billy Hagin, of the possession of a firearm during the commission of a crime, of the possession of a firearm by a convicted felon, of three counts of obstruction of officers, and of two counts of simple battery.[1] We find no error, and affirm.

Stephanie Darnell testified that about four days before the altercation between Ellison and Hagin she moved in with Sammy Riordan, and that at that time Anthony Ellison and his wife, Tabitha Ellison, were living with Riordan. She added that on the day of the killing she, Junior Acrey, Billy Hagin, and Tabitha Ellison were present at Riordan's trailer when Anthony Ellison sped into the driveway in a car. Darnell testified that she was sitting on a porch in front of the trailer with Tabitha Ellison; that after Anthony got out of the car, he told Tabitha to get his gun; that when Tabitha asked why he wanted a gun, Anthony told her to get his "damn gun"; and that Tabitha then went in the trailer and got Anthony's gun. Darnell further stated that Hagin then walked around the corner of the trailer by the porch; that Anthony jumped off the porch with the gun and stuck the gun in Hagin's face; that Anthony told Hagin to "empty your pockets"; that Hagin reached one hand into a pocket and kept one hand by his face; and that Anthony then fired the gun into Hagin's face. Darnell added that Hagin did not have a gun in his hands and that she did not see one on his person. After the shot, Darnell ran into the trailer. She testified that she looked out a window and saw Ellison wiping the gun with a cloth, but that she did not continue to watch Ellison. She added, however, that he came inside about two minutes after the shooting, and told her that he had put the gun in Hagin's hand; that he had to shoot Hagin because Hagin was a "narc"; and that if she were asked what happened, she should say that Hagin was playing with the gun and it went off.

Gary Acrey also witnessed the shooting and testified essentially

---

[1] The crimes occurred on September 22, 1994. Ellison was indicted on November 3, 1994. The jury returned its verdict on May 12, 1995, and the trial court sentenced Ellison that same day. Ellison filed a motion for new trial on May 31, 1995, and the court reporter certified the transcript on August 31, 1995. The trial court denied the motion for new trial on September 21, 1995, and Ellison filed a notice of appeal on October 18. The appeal was docketed in this Court on October 27, 1995, and was orally argued on January 17, 1996.

to the same events as Darnell. He added, though, that he heard Anthony tell Hagin that "you snitched me out"; that Hagin denied doing so; and that when Anthony had the gun pointed at Hagin's face, Hagin raised up one of his hands and the gun went off, but that he could not tell whether Hagin's hand had hit the gun. Acrey also stated that Anthony then put the gun in Hagin's right hand and later told the people present that if they said anything, he would kill them.

Another witness, Nancy Edwards, testified that before the shooting she had told Anthony Ellison that Hagin had told her that Hagin "had played both sides" regarding drug transactions.

Ellison testified that when he pulled into the driveway of Riordan's trailer, Hagin reached into the car, took out Anthony's gun, began to twirl it around, and talked about buying it. Anthony added that he went in the trailer to get a drink and came back outside. He said that Hagin was still playing with the gun, that Hagin then looked down the barrel, and that the gun went off, striking Hagin in the head.

Hagin died of a single gunshot wound to the head. When police arrived about 20 minutes after the shooting, they found the weapon that caused Hagin's death in his right hand, and when the weapon was removed the hand stayed in the same position. The microanalyst from the GBI Crime Laboratory testified that the highest concentration of gunshot residue was on the victim's left hand, and a coroner who investigated the victim's death testified that the victim's wound was not typical of a suicide because of its location on the bridge of the nose. He further testified that the wound was not a contact wound, which is typical in suicide cases.

Dr. Joseph Burton, however, testified for the defense that nothing in the forensic evidence was inconsistent with Hagin having fired the gun; that he had never seen a hand remain in the position in which Hagin's hand was found after having a gun placed in it; that rigor mortis takes about one and one-half hours to set in the hands; and that the description of the gun in Hagin's hand was consistent with a phenomenon called cadaveric spasm, where the hand almost instantaneously closes and grips the object it was intensely gripping at death.

Having reviewed the evidence in a light most favorable to the verdict, we conclude that the evidence is sufficient to support the convictions.[2] Further, we find no error is presented by the issues raised in Ellison's four enumerations of error.[3] Accordingly, we affirm Ellison's

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] Ellison contends that the trial court improperly restricted his cross-examination of a state's witness; that the prosecutor asked improper questions of a state's witness, and that the trial court erred in denying the motion for mistrial that he made after the witness an-

convictions.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 3, 1996.

*Cook & Connelly, Bobby Lee Cook, Todd M. Johnson,* for appellant.

*Stephen F. Lanier, District Attorney, Charles S. Cox, Assistant District Attorney, Michael J. Bowers, Attorney General, Christopher S. Brasher, Assistant Attorney General,* for appellee.